IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BERNADETTE M. PAIK-APAU | ) | CIVIL. NO. 10-00699 SOM/RLP |
| | ) | |
| Plaintiff, | ) | ORDER (1) GRANTING DEFENDANT |
| | ) | ROUTH CRABTREE OLSEN'S MOTION |
| vs. | ) | FOR SUMMARY JUDGMENT WITH |
| | ) | REGARD TO CAUSES 10, 11, AND |
| DEUTSCHE BANK NATIONAL TRUST | ) | 12 OF PLAINTIFF'S FIRST |
| CO., AS TRUSTEE IN TRUST OF | ) | AMENDED CLAIM FILED ON MAY |
| THE BENEFIT OF THE | ) | 16, 2011; (2) GRANTING |
| CERTIFICATE HOLDERS FOR | ) | DEFENDANTS AMERIQUEST |
| AMERIQUEST MORTGAGE | ) | MORTGAGE COMPANY AND |
| SECURITIES TRUST 2005-R11; | ) | AMERIQUEST SECURITIES, INC.'S |
| AMERIQUEST MORTGAGE COMPANY; | ) | MOTION FOR SUMMARY JUDGMENT; |
| AMERIQUEST MORTGAGE | ) | (3) GRANTING DEFENDANT |
| SECURITIES; AMERICAN HOME | ) | AMERICAN HOME MORTGAGE |
| MORTGAGE SERVICING, INC.; | ) | SERVICING, INC.'S JOINDER; |
| ROUTH CRABTREE AND OLSEN, | ) | AND (4) GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANT |
| Defendants. | ) | DEUTSCHE BANK NATIONAL TRUST |
| | ) | COMPANY'S JOINDER |
| _____ | ) | |

ORDER (1) GRANTING DEFENDANT ROUTH CRABTREE OLSEN'S
MOTION FOR SUMMARY JUDGMENT WITH REGARD TO CAUSES 10, 11, AND 12
OF PLAINTIFF'S FIRST AMENDED CLAIM FILED ON MAY 16, 2011;
(2) GRANTING DEFENDANTS AMERIQUEST MORTGAGE COMPANY AND
AMERIQUEST SECURITIES, INC.'S MOTION FOR SUMMARY JUDGMENT;
(3) GRANTING DEFENDANT AMERICAN HOME MORTGAGE SERVICING, INC.'S
JOINDER; AND (4) GRANTING IN PART AND DENYING IN PART
DEFENDANT DEUTSCHE BANK NATIONAL TRUST COMPANY'S JOINDER

I.   INTRODUCTION.

Plaintiff Bernadette Maria Paik-Apau (hereinafter

"Paik-Apau"), proceeding pro se, has filed suit against Deutsche

Bank National Trust Co. ("Deutsche Bank"), Ameriquest Mortgage

Company ("AMC"), Ameriquest Mortgage Securities ("AMS"), American

Home Mortgage Servicing, Inc. ("AHMSI"), and Routh Crabtree Olsen

("RCO") (collectively, "Defendants"), asserting a number of

1

claims relating to a foreclosure on her real property.

RCO, the law firm that represented Deutsche Bank when it initiated foreclosure proceedings against Paik-Apau, now moves for summary judgment against Paik-Apau on Causes 10 (breach of fiduciary duty), 11 (noncompliance with section § 667-5 of Hawaii Revised Statutes), and 12 (fraud by collusion for enrichment). The motion is GRANTED.

Also before this court is a Motion for Summary Judgment ("AMC Motion") filed by AMC and AMS as to the claims asserted against them. Those claims sound in fraud and attempt to invalidate the loan origination. American Home Mortgage Servicing, Inc. ("AHMSI"), and Deutsche Bank National Trust Company ("Deutsche Bank") filed their Joinder in Defendants Ameriquest Mortgage Company and Ameriquest Mortgage Securities, Inc.'s Motion for Summary Judgment ("Joinder") to the extent the AMC Motion is based on a release of claims in a settlement agreement. Summary judgment is GRANTED to AMC and AMS, GRANTED to AHMSI, GRANTED to Deutsche Bank on Causes 12 and 13, but DENIED as to Deutsche Bank on Causes 7 and 8.

II.   BACKGROUND FACTS.

Paik-Apau alleges that, on or around November 25, 2005, she executed mortgage documents for a loan from AMC for $415,000. See First Am. Claim ("FAC") ¶ 9, ECF No. 46. She alleges that, on December 1, 2005, her mortgage was securitized in a pool of

mortgages referred to as "Ameriquest Mortgage Securities, Inc. Asset-Backed Pass-Through Certificates, Series 2005-R11" under a Pooling and Servicing Agreement among AMC, AMS, and Deutsche Bank.  Id. ¶ 15.  She says that her mortgage note was sold by AMC to AMS, then by AMS to a pool of investors for which Deutsche Bank is the trustee.  Id. ¶ 16.  According to Paik-Apau, in or around July 2006, AMC sold its servicing rights to Citi Residential, which in turn sold its servicing rights to AHMSI. Id. ¶ 11.

Paik-Apau alleges that, beginning in July 2009, she attempted to discuss a possible loan modification with AHMSI, but AHMSI did not respond to her correspondence.  Id. ¶ 13.  Paik-Apau says that, on or around January 2, 2010, she received notice that RCO had been retained to foreclose on her property.  Id. ¶ 17.  On January 7, 2010, RCO recorded a Notice of Mortgagee's Intention to Foreclose Under Power of Sale ("Notice of Intention to Foreclose") with the Bureau of Conveyances.  See Exhibits "A1-010" to "A1-012" to FAC, ECF No. 46-3.  The Notice of Intention to Foreclose is signed by Derek Wong, a Hawaii attorney, as attorney for mortgagee Deutsche Bank.  Id.

Paik-Apau filed her Complaint for Emergency Injunctive and Declaratory Relief and to Stay Foreclosure Sale and Extension by Fraudulent Concealment on November 26, 2010.  See Compl., ECF No. 1.  The court dismissed her complaint on April 15, 2011.  See

3

Order Dismissing Compl. with Leave to Amend, ECF No. 43.  On May 16, 2011, Paik-Apau filed her first amended complaint, titled "First Amended Claim Deceptive and Misleading Statements; Fraudulent Representations; Circumvention of HRS 502-63; Fraudulent Documents; Fraudulent Misrepresentation of Time to Cancel; Fraudulent Mortgage Assignment; Lack of Standing to Foreclose; Negligence in Fiduciary Duty; Non-Compliance with HRS 667-5; Collusion for Enrichment; Extension by Fraud." See FAC, ECF No. 46.  The FAC alleges, among other things, that AMC fraudulently misrepresented certain facts during the loan origination period and that Deutsche Bank lacks standing to foreclose on her mortgage because her note and mortgage were improperly transferred from AMC.

On June 29, 2011, attorney Derek Wong, on behalf of Deutsche Bank, recorded a Notice of Rescission in the Bureau of Conveyances that stated that "Mortgagee does hereby rescind, cancel and withdraw said Notice of Mortgagee's Intention to Foreclose Under Power of Sale." See Exhibit "2" to Def. Routh Crabtree Olsen's Concise Statement of Facts in Support of its Mot. For Summ. J. With Regard to Causes 10, 11 and 12 of Pl.'s First Am. Claim Filed on May 16, 2011 ("RCO CSF"), ECF No. 61-3. Paik-Apau alleges that she was not informed of the rescission until RCO filed the present motion.  At the hearing on this motion, RCO said that it is not required to notify the homeowner

4

of the rescission of a foreclosure and does not typically do so. RCO's Motion for Summary Judgment ("RCO Motion") addresses the three claims asserted against it.

The AMC Motion is premised on proceedings in multi-district litigation and a consolidated class action (the "MDL"), commenced in the United States District Court for the Northern District of Illinois as In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation, MDL No. 1715, Lead Case No. 05-7097.[1]  See Borrowers' First Am. and Consolidated Class Action Compl., attached as Exhibit "4" to Def. Ameriquest Mortgage Company and Ameriquest Mortgage Securities, Inc.'s Concise Statement of Material Facts in Support of Their Mot. for Summ. J. ("AMC CSF"), ECF No. 58-8.  AMC was a named defendant in the MDL, which involved various alleged wrongdoings regarding mortgage loan origination.  Id. As a part of the MDL, the parties entered into a settlement agreement whereby the class released its claims against the defendants in exchange for $22 million.  See Settlement Agreement ("MDL Settlement Agreement"), attached as Exhibit "5" to AMC CSF, ECF No. 58-9.  AMS was included in the

---

[1] Pursuant to Rule 201 of the Federal Rules of Evidence, the court takes judicial notice of the pleadings filed in the MDL, including Borrower's First Amended and Consolidated Class Action Complaint (December 4, 2009), Settlement Agreement (December 4, 2009), Order of Preliminary Approval of Class Action Settlement (December 8, 2009), and Final Order and Judgment (June 29, 2010).  See Defs. Ameriquest Mortgage Company and Ameriquest Mortgage Securities, Inc.'s Request for Judicial Notice of Adjudicative Facts, ECF No. 59.

settlement as an "Ameriquest Released Party," and claims against "Servicers, Investors and Trustees" were also released.  Id. at 14-15.

AMC and AMS claim that Paik-Apau was a putative class member who was sent a class settlement notice in January 2010 informing her that she could opt out of the settlement.  See Decl. of Amy Lake ¶¶ 5-6, ECF No. 58-3.  That was before Paik-Apau filed the present lawsuit.  A class notice was also published in USA Today and Parade.  Id. ¶ 9.  See class notice, attached as Exhibit "6," and published notice, attached as Exhibit "7" to AMC CSF, ECF Nos. 58-10 and -11.  Paik-Apau did not respond to the class notice.  Decl. of Amy Lake ¶ 10, ECF No. 58-3.  Paik-Apau claims that she did not receive the class notice and that she did not know about the MDL until January, February, or March 2010.  See Pl.'s Mem. in Opp'n to Mot. for Summ. J. ("Opposition to AMC Motion") at 5, 7, 10, ECF No. 74.

III. STANDARD OF REVIEW.

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (2010).  See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record,

including depositions, documents, electronically stored
information, affidavits or declarations, stipulations (including
those made for the purposes of the motion only), admissions,
interrogatory answers, or other materials"; or "showing that the
materials cited do not establish the absence or presence of a
genuine dispute, or that an adverse party cannot produce
admissible evidence to support the fact." Fed. R. Civ. P. 56(c).
One of the principal purposes of summary judgment is to identify
and dispose of factually unsupported claims and defenses.
Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that
fails to demonstrate facts to establish what will be an essential
element at trial. See id. at 323.  A moving party without the
ultimate burden of persuasion at trial--usually, but not always,
the defendant--has both the initial burden of production and the
ultimate burden of persuasion on a motion for summary judgment.
Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., 210 F.3d 1099,
1102 (9th Cir. 2000).

The burden initially falls upon the moving party to
identify for the court those "portions of the materials on file
that it believes demonstrate the absence of any genuine issue of
material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors
Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp.,
477 U.S. at 323).  "When the moving party has carried its burden

under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial. T.W. Elec. Serv., Inc., 809 F.2d at 630. At least some "'significant probative evidence tending to support the complaint'" must be produced. Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). See Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587). Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party. T.W. Elec. Serv.,

8

<u>Inc.</u>, 809 F.2d at 631.  Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. <u>Id.</u>  When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." <u>Id.</u>

IV.  <u>THE RCO MOTION.</u>

> A.  Paik-Apau Fails To Raise Any Genuine Issue Of Material Fact As To Cause 10.

Paik-Apau first asserts that RCO negligently breached a fiduciary duty when it filed documents on behalf of Defendants to institute foreclosure proceedings:

> RCO illegally filed a foreclosure notice knowing that DBNTC had no standing to foreclose and that assignment was made only to facilitate the foreclosure and to deceive the Plaintiff and the court into believing that DBNTC had standing, which it did not. RCO as an attorney should have verified that standing of its client to foreclose before filing the Intent to Foreclosure [sic] Notice.  RCO was retained before the assignment was signed and should have been wary that both the Intent to Foreclose and the assignment were being recorded on the same day.

Compl. ¶ 60, ECF No. 46.  This claim appears to stem from Paik-Apau's misunderstanding of the nature of a fiduciary relationship.  In her deposition, Paik-Apau testified that she

believed that any law firm owed her a fiduciary duty by virtue of

a lawyer's ethical duties:

> Q.   Okay.   What's your understanding of
> what fiduciary duty is?
>
> A.   To me, fiduciary, or fiduciary, as
> you pronounce it, I don't know whether it's –
>
> Q.   --yeah, I'm not sure it's right
> either --
>
> A.   --yeah.  Is a duty as a lawyer to
> know the, the laws regarding, in this case,
> foreclosure actions and so forth, and who is
> legally able to -- who has standing to
> foreclose and so forth.
> That's my understanding of fiduciary
> duty.
>
> Q.   Okay.   So, in this count are you
> claiming that RCO owed a fiduciary duty to
> you?
>
> A.   Yes.   I, I believe they do, as a
> lawyer, as a law firm, that anything that
> goes through that law firm should indeed be
> upright, legal.

Pl. Dep. 236:16-237:5, Sept. 12, 2011, ECF No. 61-2.

These allegations do not give rise to a breach of

fiduciary duty.  Before a plaintiff may sue a defendant for

breach of a duty, the plaintiff must establish that the defendant

owed a duty to the plaintiff.  The existence of a duty is

entirely a question of law.  Bidar v. Amfac, Inc., 66 Haw. 547,

552, 669 P.2d 154, 158 (1983).  In determining whether a duty is

owed, the court "must weigh the considerations of policy which

favor the appellants' recovery against those which favor limiting

the appellees' liability." Blair v. Ing, 95 Haw. 247, 260, 21 P.3d 452, 465 (2001).

No law creates a general fiduciary duty owed by any law firm to all individuals. Paik-Apau appears to argue that RCO owed her a duty based on a lawyer's professional responsibility. See Pl. Dep. 236:16-237:5, ECF No. 61-2. Although a professional may be liable to someone who has not retained that professional, that claimant must show the existence of a relationship with the professional giving rise to a duty of care. See Blair, 95 Haw. at 259, 21 P.3d at 464 (holding that "where the relationship between an attorney and a non-client is such that we would recognize a duty of care, the non-client may proceed under either negligence or contract theories of recovery"). Paik-Apau does not allege a relationship between herself and RCO that gives rise to any duty owed by RCO to her. Paik-Apau only alleges that RCO "should have verified that standing of its client to foreclose before filing the Intent to Foreclosure [sic] Notice . . . ." Compl. ¶ 60, ECF No. 46. To the extent Paik-Apau bases her claim on a fiduciary duty stemming from RCO's professional status, the claim fails, as Paik-Apau does not articulate a special relationship giving rise to a fiduciary duty owed by RCO to her.

Nor did RCO, as counsel for Defendants, assume any fiduciary duty owed by Defendants to Paik-Apau, as Defendants owed no fiduciary duty to Paik-Apau:

Lenders generally owe no fiduciary
duties to their borrowers. See, e.g., Nymark
v. Heart Fed. Sav. & Loan Ass'n, 283 Cal.
Rptr. 53, 54 n.1 (Cal. App. 1991) ("The
relationship between a lending institution
and its borrower-client is not fiduciary in
nature."); Miller v. U.S. Bank of Wash., 865
P.2d 536, 543 (Wash. App. 1994) ("The general
rule . . . is that a lender is not a
fiduciary of its borrower."); Huntington
Mortg. Co. v. DeBrota, 703 N.E.2d 160, 167
(Ind. App. 1998) ("A lender does not owe a
fiduciary duty to a borrower absent some
special circumstances."); Spencer v. DHI
Mortg. Co., 642 F. Supp. 2d 1153, 1161 (E.D.
Cal. 2009) ("Absent 'special circumstances' a
loan transaction 'is at arms-length and there
is no fiduciary relationship between the
borrower and lender.'") (quoting Oaks Mgmt.
Corp. v. Super. Ct., 51 Cal. Rptr. 3d 561
(Cal. App.2006)); Ellipso, Inc. v. Mann, 541
F. Supp. 2d 365, 373 (D.D.C. 2008) ("[T]he
relationship between a debtor and a creditor
is ordinarily a contractual relationship
. . . and is not fiduciary in nature.")
(citation omitted).

McCarty v. GCP Mgmt., LLC, Civil No. 10-00133 JMS/KSC, 2010 WL

4812763, *5 (D. Haw. Nov. 17, 2010).

B.   Cause 11, Alleging A Violation Of Hawaii Revised
     Statutes § 667-5, Is Moot.

In Cause 11, Paik-Apau alleges that RCO violated

section 667-5 of Hawaii Revised Statutes by sending

correspondence from Washington, rather than Hawaii:

Correspondence received from RCO
originates from Washington State (Exhibit A1-
026) and not Hawaii.  RCO deceptively has
tried to circumvent HRS 667-5 by using a
letterhead with the address of RCO's alleged
local attorneys.  If documentation is
generated in Washington State or elsewhere,
then the local attorney is acting only as a

12

vehicle to meet state law.

Compl. ¶ 63, ECF No. 46.

Section 667-5(a) requires a nonjudicial foreclosure to be initiated by an attorney licensed by and located in Hawaii:

> (a) When a power of sale is contained in a mortgage, and where the mortgagee, the mortgagee's successor in interest, or any person authorized by the power to act in the premises, desires to foreclose under power of sale upon breach of a condition of the mortgage, the mortgagee, successor, or person shall be represented by an attorney who is licensed to practice law in the State and is physically located in the State.

Haw. Rev. Stat. § 667-5(a)(2011).  This provision ensures that borrowers have someone located in Hawaii to contact about a nonjudicial foreclosure, even if a lender does not have a Hawaii office.  RCO's Notice of Intent to Foreclose was signed by Derek Wong as the attorney for mortgagee Deutsche Bank.  See Compl. Exhibits "A1-010" to "A1-013", ECF No. 46-3.[2]

The court does not even reach the merits of Cause 11, because it is moot.  RCO filed a Notice of Rescission[3] regarding the foreclosure of Paik-Apau's property.  In Saiki v. LaSalle Bank Nat'l. Ass'n As Tr. For Structured Asset Investment Loan

_____

[2] According to the Hawaii State Bar Association website, Wong is an active attorney in good standing who was admitted to the state bar in 1986.  He is listed as working for RCO at their Hawaii address.  See Hawaii State Bar Association, http://www.myhsba.org/PublicDirectory/PublicDirectory.aspx?s=wong, derek&m=004155 (last visited Jan. 18, 2012).

[3] See Exhibit "2" to RCO CSF, ECF No. 61-3.

13

Trust Series 2003-BC2, Civil No. 10-00085 JMS/LEK, 2011 WL 601139

(D. Haw. Feb. 10, 2011), the court addressed this very issue.  In

that case, the court concluded that the notice of rescission

rendered the case moot, warranting judgment on the pleadings.

The court stated:

> Plaintiff asserts that Defendants
> violated § 667-5 by having Lorrie Womack, who
> is neither an attorney licensed to practice
> in Hawaii nor is located in Hawaii, sign the
> Notice of Foreclosure.  Defendants--who
> appear to admit a violation of § 667-5--
> nonetheless argue that Plaintiff's claim is
> moot because Cal-Western rescinded the Notice
> of Foreclosure such that there is no live
> controversy between the parties.
>
> "[A] case is moot when the
> issues presented are no longer live
> or the parties lack a legally
> cognizable interest in the
> outcome." Davis, 440 U.S. at 631
> (citations and quotations omitted).
> Voluntary cessation of challenged
> conduct renders a claim moot if
> "(1) it can be said with assurance
> that there is no reasonable
> expectation that the alleged
> violation will recur, and (2)
> interim relief or events have
> completely and irrevocably
> eradicated the effects of the
> alleged violation." Id. (citations
> omitted).  A defendant's voluntary
> change in policy only renders a
> claim moot if it is " 'a permanent
> change' in the way it [does]
> business and [is] not a 'temporary
> policy that the agency will refute
> once this litigation has
> concluded.'" Smith v. Univ. of
> Wash., Law Sch., 233 F.3d 1188,
> 1194 (9th Cir. 2000) (quoting White
> v. Lee, 227 F.3d 1214, 1243 (9th

14

Cir. 2000)).

Although Defendants have a heavy burden, even Plaintiff appears to recognize that the Notice of Rescission moots any claims based on the Notice of Foreclosure. See Pl.'s Opp'n at 15 (conceding that "much of the relief requested on an individual basis has now become moot").  The court agrees that the Notice of Rescission moots Plaintiff's claims based on Notice of Foreclosure-there is no existing controversy based on the Notice of Foreclosure because Cal-Western rendered the Notice of Foreclosure void by rescinding it. In other words, Defendants cannot foreclose on the subject property unless they issue a new Notice of Foreclosure.  Although Defendants could conceivably issue another Notice of Foreclosure that also fails to comply with HRS § 667-5, that Notice of Foreclosure would give rise to a separate claim from what is alleged in the Complaint, which is based on this particular Notice of Foreclosure.  Further, although Cal-Western appears to admit it did not comply with the requirements of § 667-5, Plaintiff cannot seek equitable relief because the Notice of Foreclosure is void, and Plaintiff is not otherwise entitled to damages for this defect.

Id. at *3-4.

Similarly, the foreclosure of Paik-Apau's property has been rescinded, rendering the Notice of Intent to Foreclose void. Paik-Apau's argument that RCO did not attempt to inform her of the rescission does not save her claim, as she does not provide any authority to support the proposition that the rescinding party has an obligation to notify the homeowner or that a failure

to notify renders the rescission ineffective.[4]   See Opposition at 4, ECF No. 76.   To the extent Cause 11 was based on that particular Notice of Intention to Foreclose, the claim is now moot.

      C.    Paik-Apau Fails To Raise Any Genuine Issue Of Material Fact As To Cause 12.

Paik-Apau further asserts that all Defendants are involved in a money-making scheme that is tantamount to fraud. As to AMC, AMS, and Deutsche Bank, Paik-Apau alleges that the three defendants negligently overlooked fraudulent acts and encouraged fraud in the rush to expedite inclusion of her loan in a securitized pool of mortgages.   Compl. ¶¶ 65-68, ECF No. 46. As to RCO, Paik-Apau alleges that it was

> also a part of this scheme to create further
> enrichment for [itself] and the participants
> of the securitized trust.  Foreclosing on
> mortgages, with most being bought by the
> banks that foreclosed for a price below the
> value of the loan, allows the securitization
> process to begin again on the same property
> thereby further enriches the participants in
> the securitization scheme.  Since all parties
> had been paid in full, . . . RCO acted with
> negligence and/or fraud in continuing to seek
> monies from an obligation that does not

---

[4] Regardless of whether RCO had a legal obligation to provide Paik-Apau with notice that the foreclosure had been halted, it certainly would have been logical and fair for RCO to have sent the Notice of Rescission to Paik-Apau.  The document clearly has a direct impact on this lawsuit and could have alleviated much of Paik-Apau's worry and uncertainty.  As the court noted at the hearing on this issue, it made no sense to keep from Paik-Apau a development so germane to her efforts to keep her property.

exist.

Id. ¶ 69.

To the extent Paik-Apau bases Cause 12 on the mere practice of securitization, her argument is without legal support.  In Sarmiento v. Bank of N.Y. Mellon, Civil No. 10-00349 JMS/BMK, 2011 WL 884457 (D. Haw. Mar. 10, 2011), the court held that the securitization process, in and of itself, does not give rise to a cognizable claim:

> The court further rejects that securitization in general somehow gives rise to a cause of action--Plaintiffs point to no law or provision in the mortgage preventing this practice, and otherwise cite to no law supporting that securitization can be the basis of a cause of action.  Indeed, other courts have likewise rejected that securitization of a mortgage loan provides the mortgagor a cause of action.  See Joyner v. Bank of Am. Home Loans, 2010 WL 2953969, at *2 (D. Nev. July 26, 2010) (rejecting breach of contract claim based on securitization of loan); Haskins v. Moynihan, 2010 WL 2691562, at *2 (D. Ariz. July 6, 2010) (rejecting claims based on securitization because Plaintiffs could point to no law indicating that securitization of a mortgage is unlawful, and "Plaintiffs fail to set forth facts suggesting that Defendants ever indicated that they would not bundle or sell the note in conjunction with the sale of mortgage-backed securities"); Lariviere v. Bank of N.Y. as Tr., 2010 WL 2399583, at *4 (D. Me. May 7, 2010) ("Many people in this country are dissatisfied and upset by [the securitization] process, but it does not mean that the Larivieres have stated legally cognizable claims against these defendants in their amended complaint."); Upperman v. Deutsche Bank Nat. Trust Co., 2010 WL 1610414, at *3 (E.D. Va. Apr. 16, 2010)

> (rejecting claims because they are based on
> an "erroneous legal theory that the
> securitization of a mortgage loan renders a
> note and corresponding security interest
> unenforceable and unsecured"); <u>Silvas v. GMAC
> Mortg., LLC</u>, 2009 WL 4573234, at *5 (D. Ariz.
> Dec. 1, 2009) (rejecting a claim that a
> lending institution breached a loan agreement
> by securitizing and cross-collateralizing a
> borrower's loan).

<u>Id.</u> at *6.

This court agrees that the securitization process, without more, does not give Paik-Apau a cognizable claim for fraud or "collusion by enrichment."[5]  Paik-Apau fails to offer any evidence that Defendants engaged in fraudulent collusion, other than that they participated in the securitization of her mortgage loan.  Clearly, Paik-Apau fails to offer any evidence that RCO engaged in fraudulent collusion, as it was not even involved in the securitization of her loans.  At most, it represented an entity that was engaged in the securitization of Paik-Apau's loan.  That is not fraudulent collusion.

Paik-Apau's arguments in response are unavailing. Although she details some aspects of the securitization process,

---

[5] Moreover, Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud be pled with particularity.  To comply with this rule, a plaintiff must clearly explain the circumstances constituting fraud so that the defendants may answer the allegations.  <u>See</u> <u>Neubronner v. Milken</u>, 6 F.3d 666, 672 (9th Cir. 1993).  Nor may a plaintiff lump all defendants together; the fraudulent acts of each defendant must be specified.  <u>See</u> <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764-65 (9th Cir. 2007).  Paik-Apau does not specify RCO's particular acts in this alleged scheme.

she fails to articulate how any of these features rises to the level of fraud or an actionable conspiracy.  See Opposition to RCO Motion at 12, ECF No. 76; Opposition to AMC Motion at 29-31, ECF No. 74.  Her request that the court deny the Motion to allow her to "continue her discovery and review of documents to formulate her argument in a more complete manner" is also unavailing, and in fact hints at Paik-Apau's acknowledgment that she currently lacks the factual basis for her claims.  Finally, Paik-Apau's reliance on a string of cases concerning criminal conspiracy is irrelevant to the present civil case.  See id. at 13.

To the extent Cause 12 could be construed as a claim for civil conspiracy (as Paik-Apau's citation to criminal conspiracy cases might suggest), the court is unpersuaded. Hawaii courts do not recognize a stand-alone cause of action for civil conspiracy; a civil conspiracy must derive from other wrongs to be actionable.  See Weinberg v. Mauch, 78 Haw. 40, 49, 890 P.2d 277, 286 (1995).  As the securitization of Paik-Apau's loan is not itself actionable, a civil conspiracy claim cannot be based on the securitization process.  The RCO Motion is granted as to Cause 12.  The AMC Motion and Joinder are also granted as to Cause 12.

V.   THE AMC MOTION.

    A.   Summary Judgment Is Granted To AMS, AMC, And AHMSI, But Counts 7 And 8 Remain Against Deutsche Bank.

This court, having reviewed the materials submitted and arguments made in connection with the AMC Motion and the Joinder in the AMC Motion, concludes that there are no genuine issues of material fact with respect to claims against AMS, AMC, and AHMSI, and that they are entitled to judgment as a matter of law on all claims. However, Deutsche Bank does not establish entitlement to summary judgment on Counts 7 and 8.

    B.   Paik-Apau Was Properly Put On Notice Of The MDL Settlement Agreement, Which Released Her Claims Against AMS.

AMC and AMS first argue that Paik-Apau was a class member in the MDL, and that the settlement of the MDL effectively released Paik-Apau's claims against AMC and AMS. To the extent the settlement also released servicers and trustees, AHMSI and Deutsche Bank join in this argument. See Joinder at 2-3, ECF No. 62. In response, Paik-Apau does not deny that she was a putative class member included in the MDL settlement, but argues that she did not receive an opt-out notice and therefore cannot be bound by the settlement agreement. See Opposition to AMC Motion at 6-10, ECF No. 74. Moreover, she argues that the MDL Settlement Agreement does not apply to this case, as the releases contained in the MDL Settlement Agreement excluded foreclosure actions. See id. at 6.

20

Any dispute about whether Paik-Apau received the settlement notice is immaterial, because her actual receipt of the notice is not necessary to bind her to the terms of the MDL Settlement Agreement.  The Ninth Circuit addressed this very issue in Silber v. Mabon, 18 F.3d 1449 (9th Cir. 1994), in which a putative class member claimed that he had not received the class settlement notice and was therefore not afforded the opportunity to opt out.  In holding that notice by mail and publication were the "the best notice practicable" in that case and sufficient to protect the class member's due process rights, the court said, "While Argyris was fortuitously unable to exercise his right to opt out in a timely fashion, that fact alone does not mean that the best practicable notice under the circumstances was not given to absent class members."  Id. at 1454.  The matter was remanded to the district court for a determination only as to whether the class member who had not timely opted out should have been given an extension to opt out because the class settlement had not yet been approved.  That circumstance is not present here.  The MDL Settlement Agreement was approved on June 29, 2010, and Paik-Apau did not seek to opt out before that date.

In the MDL, the court approved dissemination of settlement notices to class members by mail and publication.  See Exhibits "6" and "7" to AMC CSF, ECF Nos. 58-10 and -11.  It also

21

determined that those particular forms of notice provided sufficient notice to all class members consistent with all applicable requirements.  See Final Order and Judgment, attached as Exhibit "9" to AMC CSF at 2, 4, ECF No. 58-13.  Under the reasoning in Silber, Paik-Apau's alleged failure to receive the notice or to see the notice published in Parade and USA Today does not free her from the class settlement.  That is, Paik-Apau did not have to actually receive or see the class notice to be bound by the MDL Settlement Agreement.

Paik-Apau argues that, even if she is bound, the MDL Settlement Agreement does not apply to her claims, as there is an exception applicable to foreclosure claims.  Under the MDL Settlement Agreement, the defendants and certain of their affiliates, including AMC and AMS,

> shall be released from all claims, causes of
> action, or liabilities of which any and all
> Releasing Parties may or did have during the
> Class Period, including without limitation,
> in contract, in tort (including but not
> limited to personal injury, and emotional
> distress and RICO claims), statute,
> regulation, or common law, whether in
> arbitration, administrative, or judicial
> proceedings, whether as individual claims or
> as part of a class of claims or claims on
> behalf of the general public, whether known
> or unknown, suspected or unsuspected,
> threatened, asserted or unasserted, actual or
> contingent, liquidated or unliquidated, that
> relate to or arise from the matters that were
> alleged or asserted, or could have been
> alleged or asserted in the FACC and/or the
> Consolidated Actions[.]

<u>See</u> MDL Settlement Agreement § VIII.A, ECF No. 58-9.

The MDL Settlement Agreement similarly releases other related entities (including AHMSI and Deutsche Bank): "All Servicers, Investors and Trustees (collectively, the 'Additional Released Parties') shall be released from all claims, causes of actions, or liabilities of which any and all Releasing Parties may have had during the Class Period . . . ." <u>Id.</u> § VIII.B. However, the MDL Settlement Agreement also provides, "Notwithstanding the foregoing, the release of the Additional Released Parties extends only to Additional Released Claims based upon or arising out of conduct of the Ameriquest Released Parties and does not apply to claims based upon or arising out of the direct conduct of any Additional Released Party." <u>Id.</u>

With respect to AMC and AMS, Paik-Apau argues that the release is not applicable to AMC and AMS, because of what she refers to as the foreclosure exception:

> Notwithstanding any language herein, <u>the release given to Ameriquest Mortgage Company</u>; AMC Mortgage Services, Inc. (FKA Bedford Home Loans, Inc.); Town & Country Credit Corporation; Olympus Mortgage Company (NKA Bedford Home Loans, Inc.); and Argent Mortgage Company, LLC (collectively, the "Originator Defendants") <u>and to the Additional Released Parties[6] shall not extend to, and shall have no effect on statutory or common law foreclosure claims and defenses</u>

---

[6] The "Additional Released Parties" refers to "Servicers, Investors and Trustees."  <u>See</u> MDL Settlement Agreement § VIII.B, ECF No. 58-9.

<u>raised in response to, an actual or</u> <u>threatened judicial or non-judicial</u> <u>foreclosure</u> of any loan originated by a Defendant to a Class Member who is a borrower and whose loan has not been paid off or liquidated as of the Final Approval Date. <u>This exception to the Released Claims shall</u> <u>not apply to any Ameriquest Released Party</u>[7] other than the Settling Defendants and is, in any event, not intended to, and shall not, permit affirmative recovery of monetary damages in connection with any foreclosure-related, or other, proceeding.

<u>See</u> MDL Settlement Agreement § VIII.C, ECF No. 58-9 (emphasis added).  Conversely, AMC and AMS argue that Paik-Apau's claims do not involve "statutory or common law foreclosure claims and defenses raised in response to . . . foreclosure."  <u>See</u> Defs. Ameriquest Mortgage Co. and Ameriquest Mortgage Securities, Inc.'s Reply Mem. in Supp. of Their Mot. For Summ. J. at 4, ECF No. 78.

Even construing all evidence in the light most favorable to Paik-Apau, the foreclosure exception does not save Paik-Apau's claims against AMS.  AMS is one of the "Ameriquest Released Parties" released pursuant to section VIII.C of the MDL Settlement Agreement.  The foreclosure exception "shall not apply to any Ameriquest Released Party other than a Settling Defendant."  As AMS is not a Settling Defendant, the foreclosure exception does not apply to AMS.  Summary judgment is granted to

---

[7]  The "Ameriquest Released Parties" refers to a number of entities and their affiliates, including AMS.  <u>See</u> MDL Settlement Agreement § VIII.A, ECF No. 58-9.

AMS as to all claims against it.

> C.  Even If Claims Against AMC Were Not Released, Those
>     Claims Fail Substantively.

Paik-Apau's claims against the other Defendants are not so easily disposed of.  Paik-Apau instituted this case "in response to . . . threatened judicial or non-judicial foreclosure of any loan originated by a Defendant . . . ."  MDL Settlement Agreement § VIII.C, ECF No. 58-9.  At the time Paik-Apau filed her original Complaint, she believed that Deutsche Bank had instituted foreclosure proceedings against her and filed the Complaint in an effort to halt those proceedings.  See, e.g., Compl. ¶¶ 35, 58-59, ECF No. 1; Notice of Mortgagee's Intention to Foreclose Under Power of Sale dated January 7, 2010, attached as Exhibit "9" to Pl.'s Mem. in Opp'n to Def. Routh Crabtree Olsen Mot. for Summ. J., ECF No. 76.  The FAC similarly reflects Paik-Apau's intention to use this lawsuit as a defense to the foreclosure proceedings.  See, e.g., FAC ¶¶ 17-18, 35, ECF No. 46.  The Notice of Rescission signed by RCO on June 29, 2011, was recorded after the FAC was filed on May 16, 2011, and Paik-Apau claims that she did not know that the foreclosure proceedings had ceased.  See Opposition to RCO Motion at 4, ECF No. 76; Notice of Rescission, attached as Exhibit "1" to Opposition to RCO Motion, ECF No. 76.

The effect of the rescission of the foreclosure notice on Paik-Apau's claims, designed as defenses to any foreclosure,

is unclear.   Arguably, if the foreclosure exception is given its broadest reading, Paik-Apau may still proceed.   Unlike AMS, AMC was not released by the MDL Settlement Agreement.   The foreclosure exception provided that it "shall not apply to any Ameriquest Released Party [including AMS] other than the Settling Defendants . . . ."   MDL Settlement Agreement § VIII.C, ECF No. 58-9.   As AMC is included in the definition of "Settling Defendants" in the MDL Settlement Agreement, id. at 1, the foreclosure exception is applicable to AMC as a "Settling Defendant."   The MDL Settlement Agreement does not release Paik-Apau's claims against AMC to the extent they are her response to a foreclosure.   Whether she may continue to maintain those claims independent of any foreclosure is questionable.   However, the court need not resolve this issue because, even if the foreclosure exception does not bar her claims, Paik-Apau may not proceed with meritless claims.   Turning to the substance of her claims against AMC, the court finds that Paik-Apau raises no triable issue against AMC.

> 1.   Paik-Apau Fails To Raise Any Genuine Issue Of Material Fact As To Cause 1.

Paik-Apau's first cause of action is against AMC for deceptive and fraudulent statements.   She alleges that AMC fraudulently represented that she was not required to purchase flood insurance in an effort to induce her to enter into the mortgage transaction.   She states that she would not have

consummated the loan had she known she also would have to purchase flood insurance.   See FAC ¶ 28, ECF No. 46.

It appears that all of Paik-Apau's claims against AMC sound in fraud.  To state a claim for fraud, Paik-Apau must establish that (1) false representations were made by the defendant, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of her reliance upon them, and that (4) she detrimentally relied on them.  See Hawaii's Thousand Friends v. Anderson, 70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989).  The circumstances constituting the alleged fraud must be pled with particularity.  Fed. R. Civ. P. 9(b); Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).

Paik-Apau does not demonstrate that AMC is liable to her for having made false representations concerning her flood insurance.  At the signing of her loan documents on November 25, 2005, Paik-Apau claims that AMC presented her with a Notice to Borrower Not In Special Flood Hazard Area, which stated that she did not need to purchase flood insurance.  See Notice to Borrower Not In Special Flood Hazard Area, attached as Exhibit "A1-013" to FAC, ECF No. 46.  Paik-Apau also claims that she received a document stating that her property is indeed in a special flood hazard area, apparently on the same day she received the Notice to Borrower.  See Standard Flood Hazard Determination, attached

as Exhibit "A1-014" to FAC, ECF No. 46.  Paik-Apau appears to be saying the Notice to Borrower was a fraudulent statement, even if AMC gave her a contrary document on the same day.[8]

Quite apart from the lack of evidence that AMC intended that Paik-Apau rely on the Notice to Borrower (a matter called greatly into question by the simultaneous provision of a contrary document), Paik-Apau provides no evidence that she actually did rely on the allegedly false statement.  At the time Paik-Apau entered into the loan, she knew that her property was located in a flood zone and that flood insurance was required on the

_____

[8] Paik-Apau testified:

> Q.  I'm trying to understand the nature of this claim.  You obtained the loan under the understanding that you did not need flood insurance?
> A.  That's what I believed, yes.
> Q.  And when did you learn that you needed flood insurance?
> A.  Apparently, probably on that day [November 25, 2005]. . . .
> Q.  And you found out on the same day that you did need flood insurance.
> A.  I said apparently, because in looking at the documents you sent me there was something signed.  So I have to assume that on that day.
> . . .
> Q.  So, in fact, you were informed [that you] needed flood insurance?
> A.  What I'm saying is I signed the document, it appears, that says I need flood insurance.  I don't recall that document.  I recall signing a bunch of documents.

Pl. Dep. 99:21-101:23, ECF No. 58-7.

property.  See Pl. Dep. 113:14-16; 114:8-12, 115:3-11, attached
as Exhibit "3" to AMC CSF, ECF No. 58-7.  Paik-Apau already had
flood insurance covering her property, and she has continued to
maintain that policy to the present.  See First Insurance Company
of Hawaii Renewal Flood Insurance Policy Declarations, attached
as Exhibit "11" to AMC CSF, ECF No. 58-15.  Paik-Apau does not
establish that she reasonably relied on the Notice to Borrower.
At most, she says that, had AMC more clearly told her that she
continued to be required to have flood insurance, she "would have
thought seriously about it.  Whether I would or would not
[consummate the loan]."  Pl. Dep. 99:15-16, ECF No. 58-7.

        Because Paik-Apau fails to establish that AMC made a
false representation that it intended that she rely on, or that
she relied on such a representation to her detriment, the AMC
Motion is granted as to Cause 1.

        2.    Paik-Apau Fails To Raise Any Genuine Issue Of
              Material Fact As To Cause 2.

        Paik-Apau's second cause of action against AMC is for
fraudulent representation as a lender.  Essentially, Paik-Apau
alleges that AMC fraudulently represented itself as the lender,
when it in fact knew that her loan would soon thereafter be
securitized and sold to investors.  FAC ¶ 30, ECF No. 46.

        Again, Paik-Apau fails to establish that AMC made a
false statement on which she detrimentally relied.  AMC's
representation as a lender was not fraudulent.  In the executed

29

loan documents, AMC is identified as the lender.  <u>See</u> Adjustable Rate Note, attached as Exhibit "1" to AMC CSF, ECF No. 58-5; Mortgage, attached as Exhibit "2" to AMC CSF, ECF No. 58-6.  The Note also states, "I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"  <u>See</u> Adjustable Rate Note, ECF No. 58-5.

Paik-Apau fails to demonstrate why these representations are false.  AMC was the original lender in Paik-Apau's mortgage transaction, and the possibility that Paik-Apau's mortgage note might later be transferred to another entity did not make AMC's representation false.  Although "a promise made without the present intent to fulfill the promise is actionable as fraud," <u>Eastern Star, Inc. v. Union Bldg. Materials Corp.</u>, 6 Haw. App. 125, 140, 712 P.2d 1148, 1159 (Haw. Ct. App. 1985), the Hawaii Supreme Court has stated that, as a general rule, "fraud cannot be predicated on statements which are promissory in their nature, or constitute expressions of intention, and an actionable representation cannot consist of mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events, even if there is no excuse for failure to keep the promise, and even though a party acted in reliance on such promise." <u>Stahl v. Balsara</u>, 60 Haw. 144, 149, 587 P.2d 1210, 1214 (1978) (citations omitted).

Moreover, Paik-Apau does not point to any evidence that she detrimentally relied on these statements.  While she says she thought she would make payments to AMC, she does not explain how she was injured by having to send payments to a different entity.[9]  AMC's transfer of the Note was not fraudulent and did not, in and of itself, cause Paik-Apau any damage.  Summary judgment is thus granted to AMC as to Cause 2.

---

[9] Paik-Aupau testified:

> Q.  So it's your belief that, because your mortgage was sold into a pool, Ameriquest is not the lender?
> A.  Not what I would call a lender. . . .
> Q.  And how has this caused you damages?
> A.  Well, I would normally have liked to work with a company that was the one that loaned me the money.  I know who I'm paying, why I'm paying it, and I can deal with that company on a personal basis, if you will.  To me, that was important. . . .
> Q.  Now, other than your desire that you would prefer to work with the lender and not the servicer, how has this caused you damages?
> A.  Well, if I had known, now, this is an if-I-had-known-at-the-time that I would not be dealing with the entity whom I signed the loan for, I would very - more than likely probably not have even signed the documents.
> But I believe that they were the lender. I truly believed that they would be the ones that would be loaning me the money, and I would be dealing with them, as a lender, not as a servicer, not as some part of a complex arrangement of, of mortgages pooled into investments or securities.

Pl. Dep. 86:1-87:5, ECF No. 58-7.

31

3.   Paik-Apau Fails To Raise Any Genuine Issue Of Material Fact As To Cause 3.

Paik-Apau's third cause of action against AMC for deceitful and fraudulent representation similarly fails, because she does not establish a false statement on which she relied. Paik-Apau alleges that AMC fraudulently and knowingly represented itself as a "debt collector" without the required Fair Debt Collection Practices Act ("FDCPA") notices.  See FAC ¶ 32, ECF No. 46.  Paik-Apau alleges that the statements, made by AMC in fine print on the bottom of her mortgage loan statement, were false because she was not late on her mortgage payments at that time.  See Mortgage Loan Statement dated Aug. 8, 2006, attached as Exhibit "A1-003" to FAC, ECF No. 46.

Paik-Apau fails to establish that the FDCPA recital at the bottom of her mortgage statement is a false statement.  The rote language does not indicate that Paik-Apau is in default or otherwise late in making her mortgage payments.  AMC and AMS further argue that even if such statements were false, they were made by AMC Mortgage Services, Inc., rather than AMC, as evidenced by the mortgage loan statement.  See id.

Additionally, Paik-Apau does not establish that she relied on the alleged false representation.  The statements about AMC's status as a debt collector did not induce Paik-Apau to act in any way, and she points to no detriment flowing from it.  As Paik-Apau fails to identify any triable issue as to Cause 3,

32

summary judgment is granted to AMC on that claim.

> 4.    Paik-Apau Fails To Raise Any Genuine Issue Of
>       Material Fact As To Cause 4.

As to Cause 4, asserting circumvention of section 502-63 of Hawaii Revised Statutes, and fraud, Paik-Apau alleges that her marital status was altered from unmarried to married in the recorded documents without the proper notarization. <u>See</u> Mortgage, attached as Exhibits "A1-016" and "A1-017" to FAC, ECF No. 46; Trustee's Deed (Limited Warranty), attached as Exhibits "A1-018" and "A1-019" to FAC, ECF No. 46. Even if AMC thereby violated applicable state statutes, the marital status designation was not a false statement on which Paik-Apau relied. Nor does Paik-Apau offer evidence that she was injured by the incorrect statement. Paik-Apau did not discover the discrepancy until after she had entered into the loan, Opposition to AMC Motion at 14, ECF No. 74, so the statement could not have induced her to execute the mortgage documents.

Paik-Apau raises a related argument concerning the verification of her social security card, which she says is incorrect and does not match her actual card. <u>See</u> Opposition to AMC Motion at 23, ECF No. 74; Exhibits "24" and "25" to Bernadette Maria Paik-Apau's Concise Statement of Material Facts in Support of her Opp'n to Def.'s Mot. of Summ. J. ("Pl. CSF"), ECF No. 74. Paik-Apau points to no authority suggesting that an incorrect social security card verification invalidates a

mortgage.  Paik-Apau offers no evidence that the verification was fraudulent, as opposed to simply mistaken.  See Opposition to AMC Motion at 23, ECF No. 74.

Paik-Apau also attempts to raise an issue of material fact by alleging some type of misconduct by the notary.  As best the court can surmise, Paik-Apau is arguing that the notary who notarized her documents was a woman, but the name on the notarization ("N. Olsen") appears to Paik-Apau to be that of a man.  See Opposition to AMC Motion at 23, ECF No. 74, Pl. Dep. 41:23-42:21, ECF No. 58-7; Mortgage at 15, ECF No. 58-6.  Paik-Apau offers no evidence that AMC made any false representation relating to the notary, or that Paik-Apau relied on the notary's name, such that the mortgage is invalid.

Even if AMC did violate section 502-63, Paik-Apau could not prevail against AMC on that ground.  The only remedy under that statute would be a fine of not more than $200,[10] payable to the state.  The statute does not make damages available to Paik-Apau if she cannot establish damages flowing from a statutory violation.  In her Opposition to AMC's Motion, Paik-Apau attempts to invoke a criminal statute, section 710-1069.5 of Hawaii

---

[10] Section 502-62 of Hawaii Revised Statutes states, "Every notary public or other person authorized to take acknowledgments to instruments who takes the acknowledgment of any person to any instrument in which there are interlineations, erasures, or changes, and who fails to observe or perform the requirements, or any of them, of section 502-61, shall be fined not more than $200."

Revised Statutes, which is equally inapplicable to a private

cause of action.  Summary judgment is granted to AMC as to Cause

4.

>              5.    Paik-Apau Fails To Raise Any Genuine Issue Of
>                    Material Fact As To Cause 5.

In Cause 5, Paik-Apau alleges that AMC falsely created

a profit and loss statement that allowed her to borrow more than

she could repay.  See FAC ¶ 37, ECF No. 46.  Paik-Apau alleges in

the FAC that she did not create or sign the profit and loss

statement.  See Profit and Loss Statement, attached as Exhibit

"A1-020" to FAC, ECF No. 46.  Paik-Apau later recast her position

by saying, "She said she does not recall ever having prepared

something like it as it would not have been something she would

have done in that manner."  Opposition to AMC Motion at 15, ECF

No. 74.  See Pl. Dep. 166:8-11, ECF No. 58-7 ("I'm not claiming I

prepared or did not prepare it.  I'm saying that I don't recall

ever having done something like that, because it would not be

something I would do in that manner.").  Paik-Apau also concedes

that her signature appears to be on the document, although she

cannot say for certain.  See Pl. Dep. 166:16-19, ECF No. 58-7.

Given Paik-Apau's failure to come forward with evidence

of a fraudulent statement in connection with the profit and loss

statement, there is no material fact in dispute.  Paik-Apau also

does not argue that she relied on the profit and loss statement

or was induced to act thereby.  Thus, the profit and loss

statement does not serve as a viable basis for Cause 5.

Nor does the so-called Notice of Product Loan Change support Paik-Apau's allegation that the document was a representation of her financial standing that led her to believe she could afford to borrow more than she actually could.  See FAC ¶ 37, ECF No. 46; Estimated Interest Rate, Payment Due, Fees Paid, and Prepayment Charge, attached as Exhibit "A1-021" to FAC, ECF No. 46.  That document merely notes the monthly payment owed by Paik-Apau based on a principal loan amount of $366,000 and does not evidence that any loan amount was changed.  Id.  Paik-Apau appeared to acknowledge as much in her deposition testimony.  See Pl. Dep. 169:10-20, ECF No. 58-7.[11]  A lender has no duty to ensure that a borrower can make her monthly mortgage payments.  See McCarty v. GCP Mgmt., LLC, Civil No. 10-00133, 2010 WL 4812763, *5 (D. Haw. Nov. 17, 2010).  As Paik-Apau fails to

---

[11] Paik-Apau testified:

> Q.  So, in document A1-2 -- 021, what is it -- where in that document is Plaintiff's financial standing represented?
> A.  Let's see.  I'm trying to -- the loan that was to be -- to have been consummated was a $366,000 loan.
> Q.  Where -- Let me back up.  Where is your financial standing represented in this document?
> A.  My standing is not represented here.
> Q.  It's not, is it?
> A.  No.

Pl. Dep. 169:10-20, ECF No. 58-7.

provide evidence that the Notice of Product Loan Change makes any false representation or induced her to enter into the loan by making her believe she could afford the monthly payments, summary judgment is granted to AMC as to Cause 5.

      6.    Paik-Apau Fails To Raise Any Genuine Issue Of Material Fact As To Cause 6.

      In Cause 6, Paik-Apau alleges that AMC fraudulently misrepresented the time for cancellation of the loan to "induce Plaintiff to consummate a loan by offering to extend the time to cancel the loan from three business days to five." FAC ¶ 38.a, ECF No. 46. Paik-Apau fails to establish that AMC made false statements or that she relied on those allegedly false statements.

      In its Motion, AMC explains that, while Paik-Apau had three days to cancel her loan under federal law, see Notice of Right to Cancel, attached as Exhibit "A1-023" to FAC, ECF No. 46, AMC offered borrowers a one-week cancellation period as a courtesy. See One Week Cancellation Period, attached as Exhibit "A1-022" to FAC, ECF No. 46 (acknowledging that federal or state law provides a three-day cancellation period, but stating that, to "give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, we provide you with one-week . . . to cancel the loan"). Paik-Apau signed both documents and did not cancel the loan. She further admits that "at the time of the loan she had

no reason to cancel because she believed her loan was being handled as a traditional lender/borrower transaction." Opposition to AMC Motion at 17, ECF No. 74.

Based on the documents provided by Paik-Apau, the court finds no dispute of material fact as to the cancellation period. AMC did not make a fraudulent statement when it provided Paik-Apau with documents referring to both the three-day period and the one-week courtesy period. Nor does Paik-Apau produce any evidence that she relied on the representations. See Pl. Dep. 176:7-177:5, ECF No. 58-7. Summary judgment is granted to AMC as to Count 5.

      7.   Paik-Apau Fails To Raise Any Genuine Issue Of
          Material Fact As To Cause 12.

As discussed earlier in this order in connection with the RCO Motion, Paik-Apau fails to support her claim for fraud and collusion. Summary judgment is granted as to both the AMC Motion and the Joinder with respect to Cause 12.

      8.   Paik-Apau Fails To Raise Any Genuine Issue Of
          Material Fact As To Cause 13.

Finally, in Count 13, Paik-Apau appears to assert fraudulent concealment against all Defendants in an effort to toll the statute of limitations for all or some of her claims. Paik-Apau alleges that Defendants have "used predatory lending practices and concealed from Plaintiff information that may have otherwise caused Plaintiff to not consummate the loan. As a

38

result of various fraudulent concealment, by the Defendants, Plaintiff and family are now facing irreparable damage, injury, loss, and harm should the Plaintiff's family be eviction [sic] there from."  FAC ¶ 73, ECF No. 46.  Plaintiff requests leave of the court to allow further discovery from Defendants and an extension of the statute(s) of limitations under section 657-20 of Hawaii Revised Statutes.

Paik-Apau's allegation of fraudulent concealment fails because she does not provide evidence of any fraud perpetrated by any particular Defendant.  Fraudulent concealment is just a form of fraud.  See Tachibana v. Colo. Mountain Dev., Inc., No. 07-CV-00364, 2011 WL 1327113, *3 n.7 (D. Haw. Apr. 5, 2011) ("We interpret the reference to 'fraudulent concealment' as simply a means of clarifying for Defendants that the type of fraud alleged includes fraud by omission and concealment, and not just affirmative conduct."); Sung v. Hamilton, 710 F. Supp. 2d 1036, 1047 (D. Haw. 2010) (treating a fraudulent concealment claim as fraud based on alleged failures to disclose information); Associated Eng'rs & Contractors, Inc. v. State, 58 Haw. 187, 219-20, 567 P.2d 397, 418 (1977) ("Fraud in its generic sense, especially as the word is used in courts of equity, comprises all acts, omissions and concealments involving a breach of legal or equitable duty and resulting in damage to another.").  A claim for fraudulent concealment is therefore evaluated under the same

39

four elements of fraud discussed above.  <u>Sung</u>, 710 F. Supp. 2d at
1047.

Paik-Apau only argues that "Defendants collectively
enabled and encouraged a system of deceit and concealment leading
to and resulting in the illegal foreclosure on Plaintiff's
Property."  FAC ¶ 74, ECF No. 46.  She fails to present evidence
of any specific fraudulent statement or act by Defendants.  <u>See</u>
Opposition to AMC Motion at 33, ECF No. 74.  Tellingly, she does
not even identify <u>what</u> was concealed.  In short, she provides no
basis for tolling the statute of limitations period for any
claim.

Paik-Apau complains that she did not receive certain
discovery from Defendants until after her deposition, but she
does not detail whether Defendants were at fault in this regard
or how her deposition testimony might have changed had she
received discovery earlier.  Nor is the filing of any motion by
itself a reason to extend discovery or the statute of limitations
on any claim.  Paik-Apau's deposition occurred on September 12,
2011.  <u>See</u> Opposition to AMC Motion at 3, ECF No. 74.  AMC and
AMS filed their Motion on October 5, 2011, and Paik-Apau served
Defendants with discovery requests the following day.  <u>Id.</u>  Her
receipt of responses to her requests in November 2011 does not
implicate any discovery abuse or other impropriety.  The court

grants summary judgment in favor of all Defendants as to Cause 13.

> ### D.   Deutsche Bank Does Not Meet Its Burden As To Causes 7 And 8.

To the extent Paik-Apau's claims against Deutsche Bank are based on their direct wrongdoing, rather than deriving from any wrongdoing by other Defendants, such claims are not barred by the MDL Settlement Agreement.  The releases in the MDL Settlement Agreement explicitly do not "apply to claims based upon or arising out of the direct conduct of any Additional Released Party," such as Deutsche Bank.  MDL Settlement Agreement § VIII.B, ECF No. 58-9.

Causes 7 (DBNTC: Fraudulent Assignment) and 8 (DBNTC: Lack of Standing to Foreclose) facially assert claims against Deutsche Bank based on Deutsche Bank's own wrongdoing, rather than on wrongdoing by other Defendants.  See FAC ¶¶ 39-70, ECF No. 46.  Deutsche Bank's assertion that "Plaintiff has previously released and discharged all claims arising out of her residential mortgage loan transaction with Ameriquest Mortgage Company, which includes potential claims against servicers, investors, and trustees like AHMSI and DBNTC" goes too far.  Joinder at 3, ECF No. 62.

Deutsche Bank has not moved for summary judgment by filing its own motion.  Instead, it has joined in the AMC Motion, adopting AMC's arguments.  AMC's arguments did not address Causes

7 and 8 because those claims were asserted only against Deutsche Bank. Deutsche Bank's Joinder said nothing relevant to Cause 7 or Cause 8 to the extent those claims alleged wrongdoing by Deutsche Bank itself. Because the Joinder seeks summary judgment insofar as claims were released under the MDL Settlement Agreement, and because that settlement did not cover Causes 7 and 8, summary judgment as to Causes 7 and 8 is denied. For the reasons discussed earlier in this order, summary judgment is granted to Deutsche Bank as to Causes 12 and 13.

The court takes no position as to the merits of Causes 7 and 8. The court clarifies for Paik-Apau's sake that the Joinder was denied as to Causes 7 and 8 because Deutsche Bank did not make any independent argument regarding the substantive bases of the two claims and only relied on the arguments forwarded in the AMC Motion, which were inapplicable to Causes 7 and 8.

E.   AHMSI Is Entitled To Summary Judgment On Cause 9.

Paik-Apau's claims against AHMSI are subject to the same release exception applicable to Deutsche Bank, but Paik-Apau has not alleged any claim against AHMSI arising out of its own wrongdoing. While she asserts Cause 9 (Deceptive and Misleading Statements) against AHMSI, Cause 9 on its face does not allege any wrongdoing at all, and Paik-Apau presents no evidence supporting Cause 9.

In Cause 9, Paik-Apau says AHMSI lacks authority to

modify her loans, but concedes that she has requested that AHMSI

modify her loan.  Paik-Apau states that she

> is wary of a Loan Modification with AHMSI as
> Plaintiff has reviewed documents of several
> such documents and it appears to not only be
> a one-side promissory note but it also
> includes statements that preclude any suit a
> borrower would have against all parties from
> the loan originator to the participants in
> the securitization of the mortgage pool.  The
> terms of the reviewed Loan Modification
> Document leaves the borrower worse off than
> before the modification (Exhibit).  The
> documents make it extremely difficult to
> maintain the new terms of the loan.

FAC ¶ 58, ECF No. 46.[12]  Paik-Apau requests that the court halt

the loan modification process.  Id.

The court does not find any allegation of wrongdoing by

AHMSI in Cause 9.  A loan modification is an agreement that is

usually sought by a borrower requesting that the lender change

the terms of the loan.  When queried by the court on this issue,

Paik-Apau could not articulate how AHMSI was forcing her to do

something she did not want to do or why she could not walk away

from any potential loan modification if she felt it wrong or

unfair.  Because Paik-Apau has not articulated or provided

evidence of any harm caused by AHMSI that is relevant to Cause 9,

and because, on its face, Cause 9 does not appear premised on

---

[12] Paik-Apau did not specify what exhibit her
allegations refer to, and stated at the hearing on this issue
that she had inadvertently failed to attach a sample of a loan
modification document.

actual wrongdoing, summary judgment is granted to AHMSI as to

Cause 9.   Summary judgment being also granted to AHMSI as to

Causes 12 and 13, as explained earlier, no claims remain against

AHMSI.

VI.   <u>CONCLUSION.</u>

Summary judgment is GRANTED as to all claims against

RCO, AMS, AMC, and AHMSI.   Summary judgment is GRANTED as to

Deutsche Bank with respect to Causes 12 and 13, but DENIED as to

Causes 7 and 8.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 31, 2012.



   /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Paik-Apau v. Deutsche Bank National Trust Co., as Trustee in Trust of the
Benefit of the Certificate Holders for Ameriquest Mortgage Securities Trust
2005-R11 et al., Civ. No. 10-00699 SOM/RLP; Order (1) Granting Defendant Routh
Crabtree Olsen's Motion for Summary Judgment With Regard to Causes 10, 11, and
12 of Plaintiff's First Amended Claim Filed on May 16, 2011; (2) Granting
Defendants Ameriquest Mortgage Company and Ameriquest Securities, Inc.'s
Motion for Summary Judgment; (3) Granting Defendant American Home Mortgage
Servicing, Inc.'s Joinder; and (4) Granting in Part and Denying in Part
Defendant Deutsche Bank National Trust Company's Joinder.
44